Thank you, Your Honors. And may it please the court. The government now agrees that this court is the proper venue for this petition for review. And even if the court disagreed, it would be counterproductive at this point to transfer the case to a different circuit. So unless the court has any questions about venue, I will proceed directly to the merits. There are three independent reasons why the court should remand this case. First, the temporary board member who dismissed my client's appeal had already served beyond the six-month term that she was permitted to serve under federal regulations. Second, the agency's adverse credibility finding is not supported by substantial evidence. And third, even if that finding was supported by substantial evidence, the agency did not meaningfully consider whether my client has an independent, well-founded fear of future persecution or torture merely for having left Eritrea without authorization. Now with respect to the first issue, the text and history of the regulations make clear in our view that the Justice Department can appoint temporary board members to serve six-month terms but that it cannot renew those terms. When the position of temporary board member was initially created in 1998, the regulations authorized the director of EOR to appoint them for whatever time the director deems necessary. In 1998, the regulations were amended to explicitly limit temporary board members to terms not to exceed six months. That amendment would serve little purpose if the terms of temporary board members could simply be indefinitely renewed. That's a limitation on the EOR, but what about the Attorney General? We think the limitation applies to the temporary board members themselves regardless of who appoints them. I mean, if the limit only applied to those appointed by the EOR director, then the Attorney General could appoint a temporary board member for nine or 12 or 18 months. Our argument is that the terms, that the limitation applies regardless of who the actual person appointing the temporary board member is. Let me ask you this. Yes. If the Attorney General of the EOR appoints somebody to the board for six months, they serve, two years goes by, and then they appoint them again, is that, in your view, a legitimate appointment? We don't take a position on that issue and the court does not need to reach that issue in this case. In this case, there were two- How does one understand the difference between them? I'm sorry? How does one understand the difference between them? Well, here we have a classic little renewal. The temporary board member served one six-month term and there was no break whatsoever for her next six-month term. That is a classic renewal. At some point, if enough time elapsed, there would be an argument that it's no longer a renewal, it's a brand new term. But the court does not need to reach that. No, a renewal, brand new term. I fail to appreciate the difference in the sense that it's someone who's serving on the board. Well, for example, when someone has a passport, if they apply and their passport is due to expire, if they seek a new passport before their old one expires, they are renewing their passport. But if some period of time goes by, I believe it's five years, at that point, you're no longer renewing a passport, you have to apply for a brand new passport. The same logic would apply to magazine subscriptions. If your subscription continues, you're renewing it. If there's an extended break, then it's no longer a renewal. But again, I don't think the court needs to answer that question in this case because there is no dispute that there is an actual renewal. But I think more important... If the renewal was made by the Attorney General, why doesn't that make it a different situation? The regulation doesn't... Well, the regulation actually only vests the ERA director with the power to appoint these members. And are you saying that the Attorney General has no authority at all to appoint... No, we haven't made that argument in this case. We didn't think that argument would meet with much success. I think the reason that the Attorney... If that's so, then why can't the Attorney General appoint what is, in essence, a renewal term? Well, I think, again, Your Honor, by that logic, then the Attorney General could ignore all the other limits in the regulation. That would mean the Attorney General could appoint a temporary board member for nine months or 18 months or five years. We think the limitation exists regardless of the executive branch member who's making the appointment. Maybe with your three minutes and 30 seconds, you should move on to the other points. Sure. Now, with respect to the adverse credibility finding, none of the purported omissions or inconsistencies on which the board relied are actually supported by the record. So to begin with, the board was simply incorrect to say that my client was specifically asked, both by his attorney and the IJ, to describe the events immediately following the interrogation where he was struck in the face with an AK-47. Now, we know my client's attorney did not specifically ask him from the handwritten notes that the IJ made on my client's declaration. On page 208 of the joint appendix, if you look in the right-hand margin next to paragraph 15, you will see the IJ wrote, counsel passed this topic. And that's presumably why the IJ chastised my client's prior attorney for skipping around and took over questioning himself. But the IJ himself also did not specifically ask my client to describe the events immediately following his interrogation. So that exchange is on page 109 of the joint appendix. My client said, they struck me with the butt of the rifle right below my eye. The IJ then asked, what else happened? My client replied, they took me to a prison called Andoroff Abbot. The IJ then allowed his attorney to resume questioning, but said, we're at the prison now. So could my client have volunteered that he was also tied up and left out overnight before being taken to the prison? Sure, he could have. But we think it's simply unfair to fault him for not doing so in response to an open-ended question like, what else happened? And when the IJ then directed his attorney to resume questioning once he was already at the prison. Now, secondly, the board was also wrong as a factual matter to say that my client failed to mention that the guards shot at him while he was escaping. While he did not mention it on direct, he did mention it on cross when the IJ started to question him. That exchange is on page 153 of the joint appendix. In recounting my client's testimony, the IJ said, the truck continued, and then you ran away. Is that correct? My client replied, yes, they were firing their pistols at me. The IJ then accused my client of failing to mention that guards were shooting at him, even though he had just volunteered the information himself without any prompting. Now, the government argues that my client was, in fact, prompted to mention the shooting by a question that the DHS attorney asked. But the question that purportedly put my client on notice was never actually translated. So that argument does not help the government. And finally, the board misdescribed the record in saying that my client allegedly testified that he was unable to walk for the entirety of the time, that he was unable to walk at the same time that he managed to escape. If you look at the exchange between my client and his former attorney on pages 118 and 119 of the joint appendix, it's clear my client did not say that he was unable to walk for the entirety of the time that he was at Moway Prison. He said that there were long periods of time during which he was unable to walk. And that's exactly how the attorney for DHS interprets his testimony when he returned to the subject on cross. This is on page 149 of the joint appendix. DHS said, you told the immigration judge during direct testimony that your injury hampered you from being able to walk long periods of time when you were at the prison. Is that correct? And then finally, my client also testified that his health improved while he was at Moway Prison. And it would be very odd for my client to say his health improved at the same time if he was unable to walk for the duration of his stay at Moway Prison. So again, with respect to the remedy, if the court reverses all of the bases for the adverse credibility finding, it should simply reverse that finding altogether. But if the court reverses even one of the bases, we would still ask it to send the case back to the agency because there's no telling how the agency would rule on the remand if one of the bases for that finding was overturned. Your future persecution claim is not dependent upon prevailing on a remand with regard to the past person? Yes. We also think that is independent. Even if my client completely fabricated his claim, which he did not, he would still face the risk of persecution or torture merely by the fact that he left the country without authorization. Thank you, Your Honor. All right. Thank you. We've got some more. May it please the Court, Your Honor, Sam Ramitz on behalf of the United States Attorney General. Government also agrees venue at this point is decided, or at least the parties in agreement this is the proper venue. And the Court's questions appear to be pointed at the regulatory challenge, so I'll start with that argument. Petitioner's argument, well, at least our argument, is just a plain language argument. The regulation does not limit these particular set of individuals who are allowed to serve as temporary board members to one term. It says terms plural, first of all, and second of all, there's no limiting language. You would expect to say a term, for example, but there's nothing like that. So pursuant to the plain language regulation, there's no limiting factor in how many terms someone can serve. And second of all- But seriously, as the immigration judges, it mentions renewable terms, and whereas that language isn't included here, is there some kind of magic to that? There's no magic to that. That regulation was promulgated 20 years later, and you'll see in the preamble to that regulation, they don't mention this prior regulation about temporary immigration or board members. So you would presume if they had some problem with how that regulation worked, which for a long time had been allowed people to have multiple terms, they would reference that and say, we're going to make this regulation different. But it's nothing like that. So it's a plain language argument that also would just obfuscate the purpose of the regulation, which is to help the board during times of surges in immigration cases, and that's why petitioned argument fails. How many cases did this individual sit on during her renewed term? Do you have any idea? I have no idea, but presumably a lot. I've seen her name in other cases as well. All right. Moving on to the adverse credibility determination in this case. Each inconsistency, and there were three of them, is supported by substantial evidence. Now the first is, the petitioner's claim in a nutshell was that he was conscripted into the Eritrean military. He was in a training facility, and once he spoke up about the conditions in the facility, he was, depending on which version of his account you're looking at, he was mistreated in various ways and then put into prison for multiple years. Because of that, he was mistreated in prison until he finally escaped on a military truck and ran to Ethiopia. The first inconsistency in the story, however, is that in his declaration, he stated that when he first spoke up about this event, he was hit in the face with a rifle, and then his declaration says he was tied up, put on his belly, placed outside from 10 p.m. to 4.30 a.m. in the morning. How significant an omission was that, in light of the other bad things that happened to him? I think it's a very significant omission. Getting struck in the face with the butt of a rifle, being, he was in prison for a long time before that, I mean, is it reasonable that he just didn't mention it at the time? No, I think it's unreasonable. I'm sorry, just to follow up with what Judge Chin was saying, Judge Chin framed it as an omission, and you started out saying it was an inconsistency. So, I guess, in addition to responding to Judge Chin's question, it's not actually an inconsistency, it's an omission, isn't it? There's a difference between those. There's a difference, but it's two sides of the same coin. Someone's trying to tell the story of something that happened to them, and if they omit something in retelling it, it's very significant. But don't we have, I mean, in the law, the way that we look at inconsistencies versus the way we look at omissions, the way that we give those is not the same. It can be different if it's a trivial omission, but if you have a major omission like this, and this is where I'm going to respond to Judge Chin's question. The problem is that these hearings are chaotic. There's an interpreter, the I.J.'s interrupting, the I.J.'s not happy with the way the lawyer's questioning. The I.J. then takes up the questioning and back to the lawyer again. I mean, it's hard to find some kind of consistency. It's not like a deposition where one lawyer is skillfully going along and taking apart the testimony. It's chaos, and it's hard sometimes when you look at this record. It's easy to say, well, I didn't mention it. Well, the questions are, frankly, somewhat ambiguous. It wasn't tell us what happened next, and then, and then, and then he stops the lawyer from asking questions. You know, it's very hard to draw conclusions about credibility from the way this questioning proceeded, and it's not like where there's a significant graphical omission where during the interview that it goes on when they first make their application, and then they leave out all this stuff, and later on, for no reason at all, they just never mention it at the hearing. So, I mean, this seems to me to be the difficulty in the proceedings sometimes, and to then find that substantial evidence supports a conclusion that he doesn't believe what he's saying, it's, I don't know. It's certainly chaotic in the immigration court, but I think the first starting point there is that we're not the immigration judge. The immigration judge was there. They're seeing all this unfold in real time, and that's why we have standards of review. The immigration judge twice says that he omitted the most serious harm or the worst harm he experienced was being tied up overnight. Is that so in light of the other things? Getting hit in the face with a rifle butt, isn't that worse? Well, when I read this, the first thing I thought about was if a burglar broke into my house, hit me in the face, but then tied me up for hours and hours while he ransacked the house, I wouldn't remember being hit in the face. I'd remember sitting there for hours and hours wondering what was going to happen to me. This is a gentleman who claimed he was hit in the face. I think you had been locked up for a year before that and treated badly for a long time. Before the burglar broke into your house. I don't know that the analogy works. I think the analogy is that you're sitting there wondering what your fate is for hours and hours and hours. He was attacked and then arrested by these individuals. He doesn't know what's going to happen to him. He sits there for hours and hours overnight wondering, are they going to kill me, presumably? What are they going to do with me next? And what they did was they threw him in prison. So that's the psychological nature of this. It's not just simply being tied up and camping outside as Petitioner described it in his briefing. This is someone who's hit in the face and then tied up and wondering, what's happening to me? He's going to vividly remember those hours he spent wondering what's going to happen to him. Do you think he would vividly remember being hit in the face with the butt of a rifle? I think he would. He mentioned that part. But he'd mention this other very vivid part if this all happened to him. And that's what the immigration judge is looking at. Did this happen to him? Or was he maybe just a military conscript? Your opponents would say that he wasn't really asked to give that information. He was just kind of generally given time. We can walk through that. He's generally given questions as to, well, then, as opposed to, it doesn't look like a narrative at all. I think this inconsistency is a good example of refuting that point. His attorney goes and asks him on direct, trying to elicit his case, and asks him about this attack at the train headquarters. And he says, they hit me in the face. His attorney started to move forward with saying, then you're in alphabet prison. The immigration judge wanted to actually give Petitioner a chance to mention this. And you'll see the immigration judge walk this back and say, wait a minute, you're moving too fast, counsel. Let's go back to what happened at the train headquarters. And they ask him again. And he says, what happened after the conversation? The immigration judge asked him. I was hit in the face. Then the immigration judge says, well, what else happened? He doesn't mention it. Again, he doesn't mention it. So this is a very good example of an immigration judge taking effort to elicit this claim. And he doesn't say it twice over. I think that's a significant omission. Although, didn't the judge herself say that that omission in particular would not be sufficient to support an adverse credibility finding? Isn't this the one that in particular that she, perhaps I'm mistaken, but of the omissions, this one in particular, I thought there was a comment that that wouldn't have been enough to support an adverse credibility finding. There's language like that in the immigration judge's decision, where the immigration judge states that this was a significant omission. But I think at the end of the opinion, they say, in the aggregate with these other inconsistencies, I'm finding an adverse credibility termination. Right. But just to clarify, though, it's not just that the judge says, this is significant and there are all these other ones, and that's why I'm finding adverse credibility. I thought it was something more pointed that said, this inconsistency alone, if it were just this, that would not be enough. And so, I mean, I guess maybe I'm nitpicking here, but I mean, among what the judge is viewing as omissions, this was not the most significant, I guess. That's a fair way to characterize it. I think the immigration judge also characterizes it as a major omission. But there is that follow-up language where the immigration judge starts to opine, like whether or not what I would do if there were one of these other omissions, too, or inconsistencies. But you don't see the board have any equivocation like that. It gets to the board on appeal, and the board goes through each one of these three inconsistencies and finds there's no clear error in any of these. And you don't have the board making similar hesitations about the adverse credibility termination in this case, and that's the final decision on the adverse credibility termination before the court. And the other two inconsistencies are substantially supported as well. Declaration, he said this escape was I jumped off the truck, and they were shooting at me trying to murder me, and I was fortunate in his words to escape with my life. But in his declaration, or his testimony in direct and initial cross, he describes something much more docile. The truck was slowing down. He gets off. Truck rolls away. He runs away. Nothing about being shot at. Third inconsistency about not being able to walk. He does clearly say, I was not able to walk when asked about his time at Mowai Prison. And then when asked again to confirm his testimony on cross, they ask him, your injury hampered you from being able to walk long periods of time, even giving him wiggle room in the question. And he just confirms again, because of the injuries, I didn't have the strength to walk at Mowai. By the day he leaves the door of the prison, he runs away for 10 minutes. These are all significant inconsistencies supported by the record. Unless the panel has any further questions. Thank you. Thank you, Your Honors. If the court is prepared to overrule the agency's adverse credibility finding in full, then I do not believe it needs to reach the argument about the temporary board member. But I do want to just explain to the court why this issue is important and I'm not merely trying to exploit a technicality. Because the government's argument undermines, potentially undermines the decisional independence of temporary board members. And the reason is simple. If giving judges life tenure is the best way to ensure judicial independence, making judges subject to constant reappointment is the worst way to promote judicial independence. And that is particularly so when the person who is deciding whether to renew that judge's term is that judge's own superior. So if the Justice Department has the authority to renew the terms of temporary board members, those members may even subconsciously decide individual cases in a way that would make it more likely that they would be reappointed. So we don't think the regulations are ambiguous, particularly in light of the term renewable in the regulation regarding immigration judges. But to the extent the court finds any ambiguity, it should interpret those regs in a way that promotes rather than undermines the independence of temporary board members. Now, with respect, if the court has any concern that accepting our argument would lead to the vacater of thousands of decisions issued by these temporary board members, I assure you it would not. And, again, the reason is simple. There's a 30-day deadline to file a petition for review with this court, which means that even if the court accepts our argument, the only non-citizens who could actually benefit from it are those who have a pending petition for review before this court or those who would file a petition for review whose cases were decided within the past 30 days and then would file a petition for review. Anyone else, all they could do is file an untimely motion to reconsider, and there would be no benefit to doing that unless there was also a substantive defect in the proceedings. Finally, very quickly, with regards to the adverse credibility determination, I would note that while the I.J. was nominally in the room, the I.J. was at the immigration court on Verrick Street in Manhattan. My client was appearing by televideo from his jail cell in Mississippi, and his attorney was appearing by telephone from California. So this is not like a typical hearing where the judge can see everyone in front of him and make personal observations. Was the interpreter at Verrick Street? I believe the interpreter was appearing by phone, but I'm not 100% certain. Oh, okay. Thank you. Thank you, Your Honors. Thank you both. We will take the case under advisement.